[565 U.S. 368]

MARCUS D. MIMS, Petitioner

v

ARROW FINANCIAL SERVICES, LLC

565 U.S. 368, 132 S. Ct. 740, 181 L. Ed. 2d 881, 2012 U.S. LEXIS 906

[No. 10-1195]

Argued November 28, 2011.  Decided January 18, 2012.

**APPEARANCES OF COUNSEL ARGUING CASE**

**Scott L. Nelson** argued the cause for petitioner.
**Gregory G. Garre** argued the cause for respondent.

Ginsburg, J., delivered the opinion for a unanimous Court.

**OPINION OF THE COURT**

[565 U.S. 370]

Justice **Ginsburg** delivered the opinion of the Court.

This case concerns enforcement, through private suits, of the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. § 227. Voluminous consumer complaints [565 U.S. 371] about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. ■ The Act bans certain practices invasive of privacy and directs the Federal Communications Commission (FCC or Commission) to prescribe implementing regulations. It authorizes States to bring civil actions to enjoin prohibited practices and to recover damages on their residents' behalf. The Commission must be notified of such suits and may intervene in them. Jurisdiction over state-initiated TCPA suits, Congress provided, lies exclusively in the U. S. district courts. Congress also provided for civil actions by private parties seeking redress for violations of the TCPA or of the Commission's implementing regulations.

Petitioner Marcus D. Mims, complaining of multiple violations of the Act by respondent Arrow Financial Services, LLC (Arrow), a debt-collection agency, commenced an action for damages against Arrow in the U. S. District Court for the Southern District of Florida. Mims invoked the court's "federal question" jurisdiction, *i.e.*, its authority to adjudicate claims "arising under the . . . laws . . . of the United States," 28 U.S.C. § 1331. The District Court, affirmed by the U. S. Court of Appeals for the Eleventh Circuit, dismissed Mims's complaint for want of subject-matter jurisdiction. Both courts relied on Congress' specification, in the TCPA, that a private person may seek redress for violations of the Act (or of the Commission's regulations thereunder) "in an appropriate court of [a] State," "if [such an action is] otherwise permitted by the laws or rules of court of [that] State." 47 U.S.C. §§ 227(b)(3), (c)(5).

The question presented is whether Congress' provision for private actions to enforce the TCPA renders state courts the *exclusive* arbiters of such actions. We have long recognized [565 U.S. 372] that "[a] suit arises under the law that creates the cause of action." *American Well Works Co.* v. *Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S. Ct. 585, 60 L. Ed. 987 (1916). Beyond doubt, the TCPA is a federal law that both creates the claim Mims has brought and supplies the substantive rules that will govern the case. ■ We find no convincing reason to read into the TCPA's permissive grant of jurisdiction to state courts any barrier to the

U. S. district courts' exercise of the general federal-question jurisdiction they have possessed since 1875. See Act of Mar. 3, 1875, § 1, 18 Stat. 470; 13D C. Wright, A. Miller, E. Cooper, & R. Freer, Federal Practice and Procedure § 3561, p. 163 (3d ed. 2008) (hereinafter Wright & Miller). We hold, therefore, that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA.

## I

## A

In enacting the TCPA, Congress made several findings relevant here. "Unrestricted telemarketing," Congress determined, "can be an intrusive invasion of privacy." TCPA, § 2, ¶ 5, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted). In particular, Congress reported, "[m]any consumers are outraged over the proliferation of intrusive, nuisance [telemarketing] calls to their homes." ¶ 6, *ibid.* (internal quotation marks omitted). "[A]utomated or prerecorded telephone calls" made to private residences, Congress found, were rightly regarded by recipients as "an invasion of privacy." ¶¶ 10, 12, *ibid.* (internal quotation marks omitted). Although over half the States had enacted statutes restricting telemarketing, Congress believed that federal law was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations."

¶ 7, *ibid.* (internal quotation marks omitted). See also S. Rep. No. 102-178,

[565 U.S. 373]

p. 3 (1991) ("[B]ecause States do not have jurisdiction over interstate calls[,] [m]any States have expressed a desire for Federal legislation . . . .").[1]

■ Subject to exceptions not pertinent here, the TCPA principally outlaws four practices. First, the Act makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. See 47 U.S.C. § 227(b)(1)(A). Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).[2]

■ The TCPA delegates authority to the FCC to ban artificial and prerecorded voice calls to businesses, § 227(b)(2)(A), and to exempt particular types of calls from the law's requirements, §§ 227(b)(2)(B), (C). The

---

**1.** In general, the Communications Act of 1934 grants to the Federal Communications Commission (Commission) authority to regulate interstate telephone communications and reserves to the States authority to regulate intrastate telephone communications. See *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U.S. 355, 360, 369-370, 106 S. Ct. 1890, 90 L. Ed. 2d 369 (1986).

**2.** In 2010, Congress amended the statute to prohibit an additional practice: the manipulation of caller-identification information. See Truth in Caller ID Act of 2009, Pub. L. 111-331, 124 Stat. 3572. This legislation inserted a new subsection (e) into 47 U.S.C. § 227 and redesignated the former subsections (e), (f), and (g) as subsections (f), (g), and (h), respectively. *Ibid.* While the new subsection (e) does not bear on this case and is not here discussed, our citations of subsection (g) refer to the current, redesignated statutory text.

Act also directs the FCC to prescribe regulations to protect the privacy of residential

[565 U.S. 374]

telephone subscribers, possibly through the creation of a national "do not call" system. § 227(c).[3]

■ Congress provided complementary means of enforcing the Act. State Attorneys General may "bring a civil action on behalf of [state] residents," if the Attorney General "has reason to believe that any person has engaged . . . in a pattern or practice" of violating the TCPA or FCC regulations thereunder. § 227(g)(1) (2006 ed., Supp. IV). "The district courts of the United States . . . have exclusive jurisdiction" over all TCPA actions brought by State Attorneys General. § 227(g)(2). The Commission may intervene in such suits. § 227(g)(3).[4]

Title 47 U.S.C. § 227(b)(3), captioned "Private right of action," provides:

■ "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—

"(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

"(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

"(C) both such actions.

"If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an

[565 U.S. 375]

amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

■ A similar provision authorizes a private right of action for a violation of the FCC's implementing regulations.[5]

B

Mims, a Florida resident, alleged that Arrow, seeking to collect a debt, repeatedly used an automatic telephone dialing system or prerecorded or artificial voice to call Mims's cellular phone without his consent. Commencing suit in the U. S. District Court for the Southern District of Florida, Mims charged that Arrow "willfully or knowingly violated the

---

**3.** The National Do Not Call Registry is currently managed by the Federal Trade Commission. See 15 U.S.C. § 6151 (2006 ed., Supp. IV); 16 CFR § 310.4(b)(1)(iii) (2011).

**4.** ■ The TCPA envisions civil actions instituted by the Commission for violations of the implementing regulations. See 47 U.S.C. § 227(g)(7) (2006 ed., Supp. IV). The Commission may also seek forfeiture penalties for willful or repeated failure to comply with the Act or regulations. 47 U.S.C. § 503(b) (2006 ed. and Supp. IV), § 504(a) (2006 ed.).

**5.** Title 47 U.S.C. § 227(c)(5), also captioned "Private right of action," provides:
■ "A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—
"(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
"(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
"(C) both such actions."

TCPA." App. 14. He sought declaratory relief, a permanent injunction, and damages. *Id.*, at 18-19.

The District Court held that it lacked subject-matter jurisdiction over Mims's TCPA claim. Under Eleventh Circuit precedent, the District Court explained, federal question jurisdiction under 28 U.S.C. § 1331 was unavailable "because Congress vested jurisdiction over [private actions under] the TCPA exclusively in state courts." Civ. No. 09-22347 (SD Fla., Apr. 1, 2010), App. to Pet. for Cert. 4a-5a (citing *Nicholson* v. *Hooters of Augusta, Inc.*, 136 F.3d 1287 (CA11 1998)). Adhering to Circuit precedent, the U. S. Court of Appeals for the Eleventh Circuit affirmed. 421 Fed. Appx.

[565 U.S. 376]

920, 921 (2011) (*per curiam*) ("Congress granted state courts exclusive jurisdiction over private actions under the [TCPA]." (quoting *Nicholson*, 136 F.3d, at 1287-1288)).

We granted certiorari, 564 U.S. 1036, 131 S. Ct. 3063, 180 L. Ed. 2d 884 (2011), to resolve a split among the Circuits as to whether Congress granted state courts exclusive jurisdiction over private actions brought under the TCPA. Compare *Murphey* v. *Lanier*, 204 F.3d 911, 915 (CA9 2000) (U. S. district courts lack federal-question jurisdiction over private TCPA actions), *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 519 (CA3 1998) (same), *Foxhall Realty Law Offices, Inc.* v. *Telecommunications Premium Servs., Ltd.*, 156 F.3d 432, 434 (CA2 1998) (same), *Nicholson*, 136 F.3d, at 1287-1288 (same), *Chair King, Inc.* v. *Houston Cellular Corp.*, 131 F.3d 507, 514 (CA5 1997) (same), and *International Science &*

*Technology Inst.* v. *Inacom Communications, Inc.*, 106 F.3d 1146, 1158 (CA4 1997) (same), with *Charvat* v. *EchoStar Satellite, LLC*, 630 F.3d 459, 463-465 (CA6 2010) (U. S. district courts have federal-question jurisdiction over private TCPA actions), *Brill* v. *Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (CA7 2005) (same), and *ErieNet*, 156 F.3d, at 521 (Alito, J., dissenting) (same). We now hold that ▇ Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits.

II

▇ Federal courts, though "courts of limited jurisdiction," *Kokkonen* v. *Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994), in the main "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given," *Cohens* v. *Virginia*, 6 Wheat. 264, 404, 5 L. Ed. 257 (1821). ▇ Congress granted federal courts general federal question jurisdiction in 1875. See Act of Mar. 3, 1875, § 1, 18 Stat. 470.[6] As now codified, the law provides: "The district

[565 U.S. 377]

courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The statute originally included an amount-in-controversy requirement, set at $500. See Act of Mar. 3, 1875, § 1, 18 Stat. 470. Recognizing the responsibility of federal courts to decide claims, large or small, arising under federal law, Congress in 1980 eliminated the amount-in-controversy requirement in federal question (but not diversity) cases. See Federal Question Jurisdictional

---

6. Congress had previously granted general federal-question jurisdiction to federal courts, but the grant was short lived. See *Steffel* v. *Thompson*, 415 U.S. 452, 464, n. 14, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974) (describing Midnight Judges Act of 1801, § 11, 2 Stat. 92, repealed by Act of Mar. 8, 1802, § 1, 2 Stat. 132).

Amendments Act of 1980, 94 Stat. 2369 (amending 28 U.S.C. § 1331). See also H. R. Rep. No. 96-1461, p. 1 (1980).[7] Apart from deletion of the amount-in-controversy requirement, the general federal question provision has remained essentially unchanged since 1875. See 13D Wright & Miller 163.

Because federal law creates the right of action and provides the rules of decision, Mims's TCPA claim, in 28 U.S.C. § 1331's words, plainly "aris[es] under" the "laws . . . of the United States." As already noted, *supra*, at 371, 181 L. Ed. 2d, at 889, ▉ "[a] suit arises under the law that creates the cause of action." *American Well Works*, 241 U.S., at 260, 36 S. Ct. 585, 60 L. Ed. 987. Although courts have described this formulation as "more useful for inclusion than for . . . exclusion," *Merrell Dow Pharmaceuticals Inc.* v. *Thompson*, 478 U.S. 804, 809, n. 5, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (quoting *T. B. Harms Co.* v. *Eliscu*, 339 F.2d 823, 827 (CA2 1964)), there is no serious debate that a federally created claim for relief is generally a "sufficient condition for federal-question jurisdiction," *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Mfg.*, 545 U.S. 308, 317, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).[8]

[565 U.S. 378]

Arrow agrees that this action arises under federal law, see Tr. of Oral Arg. 27, but urges that Congress vested exclusive adjudicatory authority over private TCPA actions in state courts. ▉ In cases "arising under" federal law, we note, there is a "deeply rooted presumption in favor of concurrent state court jurisdiction," rebuttable if "Congress affirmatively ousts the state courts of jurisdiction over a particular federal claim." *Tafflin* v. *Levitt*, 493 U.S. 455, 458-459, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990). *E.g.*, 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction . . . ."). The presumption of concurrent state-court jurisdiction, we have recognized, can be overcome "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co.* v. *Mobil Oil Corp.*, 453 U.S. 473, 478, 101 S. Ct. 2870, 69 L. Ed. 2d 784 (1981).

Arrow readily acknowledges the presumption of concurrent state-court jurisdiction, but maintains that 28 U.S.C. § 1331 creates no converse presumption in favor of federal-court jurisdiction. Instead, Arrow urges, the TCPA, a later, more specific statute,

---

**7.** At the time it was repealed, the amount-in-controversy requirement in federal-question cases had reached $10,000. See Act of July 25, 1958, 72 Stat. 415. Currently, the amount in controversy in diversity cases must exceed $75,000. See 28 U.S.C. § 1332.

**8.** For a rare exception to the rule that a federal cause of action suffices to ground federal-question jurisdiction, see *Shoshone Mining Co.* v. *Rutter*, 177 U.S. 505, 20 S. Ct. 726, 44 L. Ed. 864 (1900), discussed in R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler's The Federal Courts and the Federal System 784-785 (6th ed. 2009). In *Shoshone Mining*, we held that a suit for a federal mining patent did not arise under federal law for jurisdictional purposes because "the right of possession" in controversy could be determined by "local rules or customs or state statutes," 177 U.S., at 509, 510, 20 S. Ct. 726, 44 L. Ed. 864, or "may present simply a question of fact," *id.*, at 509, 20 S. Ct. 726, 44 L. Ed. 864. Here, by contrast, the TCPA not only creates the claim for relief and designates the remedy; critically, the Act and regulations thereunder supply the governing substantive law.

displaces § 1331, an earlier, more general prescription. See Tr. of Oral Arg. 28-29; Brief for Respondent 31.

Section 1331, our decisions indicate, is not swept away so easily. As stated earlier, see *supra*, at 377, 181 L. Ed. 2d, at 893, ■ when federal law creates a private right of action and furnishes the substantive rules of decision, the claim arises under federal law, and district courts possess federal-question jurisdiction

[565 U.S. 379]

under § 1331.[9] That principle endures unless Congress divests federal courts of their § 1331 adjudicatory authority. See, *e.g.*, *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.*, 535 U.S. 635, 642, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002) (Nothing in 47 U.S.C. § 252(e)(6) *"divest[s]* the district courts of their authority under 28 U.S.C. § 1331 to review the [state agency's] order for compliance with federal law."); *K mart Corp.* v. *Cartier, Inc.*, 485 U.S. 176, 182-183, 108 S. Ct. 950, 99 L. Ed. 2d 151 (1988) ("The District Court would be divested of [§ 1331] jurisdiction . . . if this action fell within one of several specific grants of exclusive jurisdiction to the Court of International Trade [under 28 U.S.C. § 1581(a) or § 1581(i)(3)].").

■ "[D]ivestment of district court jurisdiction" should be found no more readily than "divestmen[t] of state court jurisdiction," given "the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331." *ErieNet*, 156 F.3d, at 523 (Alito, J., dissenting); see Gonell, Note, Statutory Interpretation of Federal Jurisdictional Statutes: Jurisdic-

tion of the Private Right of Action Under the TCPA, 66 Ford. L. Rev. 1895, 1929-1930 (1998). Accordingly, the District Court retains § 1331 jurisdiction over Mims's complaint unless the TCPA, expressly or by fair implication, excludes federal-court adjudication. See *Verizon Md.*, 535 U.S., at 644, 122 S. Ct. 1753, 152 L. Ed. 2d 871; Gonell, *supra*, at 1929 (Jurisdiction over private TCPA actions "is proper under § 1331 unless Congress enacted a partial repeal of § 1331 in the TCPA.").

## III

Arrow's arguments do not persuade us that Congress has eliminated § 1331 jurisdiction over private actions under the TCPA.

[565 U.S. 380]

The language of the TCPA—"A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State," 47 U.S.C. § 227(b)(3)—Arrow asserts, is uniquely state-court oriented. See Brief for Respondent 13. That may be, but ■ "[i]t is a general rule that the grant of jurisdiction to one court does not, of itself, imply that the jurisdiction is to be exclusive." *United States* v. *Bank of New York & Trust Co.*, 296 U.S. 463, 479, 56 S. Ct. 343, 80 L. Ed. 331 (1936).

■ Nothing in the permissive language of § 227(b)(3) makes state-court jurisdiction exclusive, or otherwise purports to oust federal courts of their 28 U.S.C. § 1331 jurisdiction over federal claims. See, *e.g.*, *Verizon Md.*, 535 U.S., at 643, 122 S. Ct. 1753, 152 L. Ed. 2d 871 ("[N]othing in 47 U.S.C. § 252(e)(6) purports to strip

---

9. Even when a right of action is created by state law, if the claim requires resolution of significant issues of federal law, the case may arise under federal law for 28 U.S.C. § 1331 purposes. See *Grable & Sons Metal Products, Inc.* v. *Darue Engineering & Mfg.*, 545 U.S. 308, 312, 125 S. Ct. 2363, 162 L. Ed. 2d 257 (2005).

[§ 1331] jurisdiction."). Cf. *Yellow Freight System, Inc.* v. *Donnelly*, 494 U.S. 820, 823, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (1990) (Title VII's language—"[e]ach United States district court . . . shall have jurisdiction of actions brought under this subchapter," 42 U.S.C. § 2000e-5(f)(3)—does not "ous[t] state courts of their presumptive jurisdiction." (internal quotation marks omitted)). Congress may indeed provide a track for a federal claim exclusive of § 1331. See, *e.g.*, 42 U.S.C. § 405(h) ("No action . . . shall be brought under [§ 1331] to recover on any claim arising under [Title II of the Social Security Act]."); *Weinberger* v. *Salfi*, 422 U.S. 749, 756-757, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975). Congress has done nothing of that sort here, however.

■ Title 47 U.S.C. § 227(b)(3) does not state that a private plaintiff may bring an action under the TCPA "only" in state court, or "exclusively" in state court. The absence of such a statement contrasts with the Act's instruction on suits instituted by State Attorneys General. As earlier noted, see *supra*, at 374, 181 L. Ed. 2d, at 891, § 227(g)(2) (2006 ed., Supp. IV) vests "exclusive jurisdiction over [such] actions" in "[t]he district courts of the United States."[10] Section 227(g)(2)'s exclusivity prescription

[565 U.S. 381]

"reinforce[s] the conclusion that [§ 227(b)(3)'s] silence . . . leaves the jurisdictional grant of § 1331 untouched. For where otherwise applicable jurisdiction was meant to be excluded, it was excluded expressly." *Verizon Md.*, 535 U.S., at 644, 122 S. Ct. 1753, 152 L. Ed. 2d 871; see *ErieNet*, 156 F.3d, at 522 (Alito, J., dissenting) ("Section [227(g)(2)] reveals that, while drafting the TCPA, Congress knew full well how to grant exclusive jurisdiction with mandatory language. The most natural interpretation of Congress' failure to use similar language in section 227(b)(3) is that Congress did not intend to grant exclusive jurisdiction in that section."); *Brill*, 427 F.3d, at 451 ("[Section 227(g)(2)] is explicit about exclusivity, while § 227(b)(3) is not; the natural inference is that the state forum mentioned in § 227(b)(3) is optional rather than mandatory.").[11]

Arrow urges that Congress would have had no reason to provide for a private action "in an appropriate

10. "How strange it would be," the Seventh Circuit observed, "to make federal courts the exclusive forum for suits by the states, while making state courts the exclusive forum for suits by private plaintiffs." *Brill* v. *Countrywide Home Loans, Inc.*, 427 F.3d 446, 451 (2005).

11. **[20]** For TCPA actions brought by State Attorneys General, or "an[other] official or agency designated by a State," 47 U.S.C. § 227(g)(1) (2006 ed., Supp. IV), Arrow points out, Congress specifically addressed venue, service of process, § 227(g)(4), and potential conflicts between federal and state enforcement efforts, § 227(g)(7). No similar prescriptions appear in the section on private actions, 47 U.S.C. § 227(b)(3), for this obvious reason:

"[As] the general rules governing venue and service of process in the district courts are well established, *see* 28 U.S.C. § 1391(b); Fed. Rules Civ. Proc. 4, 4.1, there was no need for Congress to reiterate them in section 227(b)(3). The fact that venue and service of process are discussed in section [227(g)(4) (2006 ed., Supp. IV)] and not section 227(b)(3) simply indicates that Congress wished to make adjustments to the general rules in the former section and not the latter. As for the conflict provision that appears in section 227(g) (2006 ed., Supp. IV)] but not section 227(b)(3), it is hardly surprising that Congress would be concerned about agency conflicts in the section of the TCPA dealing with official state enforcement efforts but not in the section governing private lawsuits." *ErieNet, Inc.* v. *Velocity Net, Inc.*, 156 F.3d 513, 523 (CA3 1998) (Alito, J., dissenting).

[state] court,"

[565 U.S. 382]

§ 227(b)(3), if it did not mean to make the state forum exclusive. Had Congress said nothing at all about bringing private TCPA claims in state courts, Arrow observes, those courts would nevertheless have concurrent jurisdiction. See *supra*, at 378, 181 L. Ed. 2d, at 893. True enough, but Congress had simultaneously provided for TCPA enforcement actions by state authorities, § 227(g) (2006 ed., Supp. IV), and had made federal district courts exclusively competent in such cases, § 227(g)(2). Congress may simply have wanted to avoid any argument that in private actions, as in actions brought by State Attorneys General, "federal jurisdiction is exclusive." *Brill*, 427 F.3d, at 451 (emphasis deleted) (citing *Yellow Freight*, 494 U.S. 820, 110 S. Ct. 1566, 108 L. Ed. 2d 834 (holding, after 26 years of litigation, that claims under the Civil Rights Act of 1964 may be resolved in state as well as federal courts), and *Tafflin*, 493 U.S. 455, 110 S. Ct. 792, 107 L. Ed. 2d 887 (holding, after 20 years of litigation, that claims under RICO may be resolved in state as well as federal courts)). Moreover, ■ by providing that private actions may be brought in state court "if otherwise permitted by the laws or rules of court of [the] State," 47 U.S.C. § 227(b)(3), Congress arguably gave States leeway they would otherwise lack to "decide for [themselves] whether to entertain claims under the [TCPA]," *Brill*, 427 F.3d, at 451. See Brief for Respondent 16

(Congress "le[ft] States free to decide what TCPA claims to allow.").[12]

Making state-court jurisdiction over § 227(b)(3) claims exclusive, Arrow further asserts, "fits hand in glove with

[565 U.S. 383]

[Congress'] objective": enabling States to control telemarketers whose interstate operations evaded state law. *Id.*, at 15. Even so, we have observed, ■ jurisdiction conferred by 28 U.S.C. § 1331 should hold firm against "mere implication flowing from subsequent legislation." *Colorado River Water Conservation Dist.* v. *United States*, 424 U.S. 800, 808, 809, n. 15, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976) (quoting *Rosencrans* v. *United States*, 165 U.S. 257, 262, 17 S. Ct. 302, 41 L. Ed. 708 (1897)).

We are not persuaded, moreover, that Congress sought only to fill a gap in the States' enforcement capabilities. Had Congress so limited its sights, it could have passed a statute providing that out-of-state telemarketing calls directed into a State would be subject to the laws of the receiving State. Congress did not enact such a law. Instead, ■ it enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency. See 47 U.S.C. § 227. TCPA liability thus depends on violation of a federal statutory requirement or an FCC regulation, §§ 227(b)(3)(A), (c)(5), not on a violation of any state substantive law.

The federal interest in regulating telemarketing to "protec[t] the pri-

---

**12.** ■ The Supremacy Clause declares federal law the "supreme law of the land," and state courts must enforce it "in the absence of a valid excuse." *Howlett* v. *Rose*, 496 U.S. 356, 370, n. 16, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990). "An excuse that is inconsistent with or violates federal law is not a valid excuse: The Supremacy Clause forbids state courts to dissociate themselves from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source." *Id.*, at 371, 110 S. Ct. 2430, 110 L. Ed. 2d 332. Without the "if otherwise permitted" language, 47 U.S.C. § 227(b)(3), there is little doubt that state courts would be obliged to hear TCPA claims. See *Testa* v. *Katt*, 330 U.S. 386, 394, 67 S. Ct. 810, 91 L. Ed. 967 (1947).

vacy of individuals" while "permit[ting] legitimate [commercial] practices," § 2, ¶ 6, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings) (internal quotation marks omitted), is evident from the regulatory role Congress assigned to the FCC. See, *e.g.*, § 227(b)(2) (delegating to the FCC authority to exempt calls from the Act's reach and prohibit calls to businesses). Congress' design would be less well served if consumers had to rely on "the laws or rules of court of a State," § 227(b)(3), or the accident of diversity jurisdiction,[13] to gain redress for TCPA violations.

[565 U.S. 384]

Arrow emphasizes a statement made on the Senate floor by Senator Hollings, the TCPA's sponsor:

"Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

.   .   .   .   .

"The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. . . .

"Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill." 137 Cong. Rec. 30821-30822 (1991).

[565 U.S. 385]

This statement does not bear the weight Arrow would place on it.

First, ■■■ the views of a single legislator, even a bill's sponsor, are not controlling. *Consumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U.S. 102, 118, 100 S. Ct. 2051, 64 L. Ed. 2d 766 (1980). Second, Senator Hollings did not mention federalcourt jurisdiction or otherwise suggest that 47 U.S.C. § 227(b)(3) is intended to divest federal courts of authority to hear TCPA claims. Hollings no doubt believed that minerun TCPA claims would be pursued most expeditiously in state small-

---

**13.** Although all Courts of Appeals to have considered the question have held that the TCPA does not bar district courts from exercising diversity jurisdiction under 28 U.S.C. § 1332, see, *e.g.*, *Gottlieb* v. *Carnival Corp.*, 436 F.3d 335 (CA2 2006), at oral argument, Arrow's counsel maintained that diversity jurisdiction "should go, too," Tr. of Oral Arg. 39. Were we to accept Arrow's positions that diversity and federal question jurisdiction are unavailable, and that state courts may refuse to hear TCPA claims, residents of States that choose not to hear TCPA claims would have no forum in which to sue.

claims court.[14] But one cannot glean from his statement any expectation that those courts, or state courts generally, would have exclusive jurisdiction over private actions alleging violations of the Act or of the FCC's implementing regulations. Third, even if we agreed with Arrow that Senator Hollings expected private TCPA actions to proceed solely in state courts, and even if other supporters shared his view, that expectation would not control our judgment on 28 U.S.C. § 1331's compass. Cf. *Yellow Freight*, 494 U.S., at 826, 110 S. Ct. 1566, 108 L. Ed. 2d 834 ("persuasive showing that most legislators, judges, and administrators . . . involved in the enactment, amendment, enforcement, and interpretation of Title VII expected that such litigation would be processed exclusively in federal courts" did not overcome presumption of concurrent state-court jurisdiction).

Among its arguments for state-court exclusivity, Arrow raises a concern about the impact on federal courts were we to uphold § 1331 jurisdiction over private actions under the TCPA. "[G]iven the enormous volume of telecommunications

[565 U.S. 386]

presenting potential claims," Arrow projects, federal courts could be inundated by $500-per-violation TCPA claims. Brief for Respondent 33. "Moreover, if plaintiffs are free to bring TCPA claims in federal court under § 1331,

then defendants sued in state court would be equally free to remove those cases to federal court under 28 U.S.C. § 1441." *Id.*, at 22-23. Indeed, Arrow suggests, defendants could use removal as a mechanism to force small-claims-court plaintiffs to abandon suit rather than "figh[t] it out" in the "more expensive federal forum." *Id.*, at 23.

Arrow's floodgates argument assumes "a shocking degree of noncompliance" with the Act, Reply Brief 11, and seems to us more imaginary than real. The current federal district court civil filing fee is $350. 28 U.S.C. § 1914(a). How likely is it that a party would bring a $500 claim in, or remove a $500 claim to, federal court? Lexis and Westlaw searches turned up 65 TCPA claims removed to federal district courts in Illinois, Indiana, and Wisconsin since the Seventh Circuit held, in October 2005, that the Act does not confer exclusive jurisdiction on state courts. All 65 cases were class actions, not individual cases removed from small-claims court.[15] There were also 26 private TCPA claims brought initially in federal district courts; of those, 24 were class actions.

IV

■ Nothing in the text, structure, purpose, or legislative history of the TCPA calls for displacement of the federal question jurisdiction U. S. district courts ordinarily have

[565 U.S. 387]

under 28

---

14. The complaint in this very case, we note, could not have been brought in small-claims court. Mims alleged some 12 calls, and sought treble damages ($1,500) for each. See App. 9-14; Tr. of Oral Arg. 12. The amount he sought to recover far exceeded the $5,000 ceiling on claims a Florida small-claims court can adjudicate. See Fla. Small Claims Rule 7.010(b) (rev. ed. 2011).

15. ■ When Congress wants to make federal claims instituted in state court nonremovable, it says just that. See *Breuer* v. *Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696-697, 123 S. Ct. 1882, 155 L. Ed. 2d 923 (2003) (quoting, *e.g.*, 28 U.S.C. § 1445(a) ("A civil action in any State court against a railroad or its receivers or trustees, [arising under §§ 51-60 of Title 45,] may not be removed to any district court of the United States.") and 15 U.S.C. § 77v(a) ("[N]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States.")).

U.S.C. § 1331. In the absence of direction from Congress stronger than any Arrow has advanced, we apply the familiar default rule: Federal courts have § 1331 jurisdiction over claims that arise under federal law. Because federal law gives rise to the claim for relief Mims has stated and specifies the substantive rules of decision, the Eleventh Circuit erred in dismissing Mims's case for lack of subject-matter jurisdiction.

*    *    *

For the reasons stated, the judgment of the United States Court of Appeals for the Eleventh Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.